LEON BUENO, PLAINTIFF IN ERROR, vs. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A conviction in the municipal court of a city based upon a city ordinance creating an offense against the city is no bar to a State prosecution for the same acts which under a State statute constitute an offense against the State.

2. Where an information charges only one offense, but in its several counts charges that offense to have been committed in different ways or by different methods, and there is a general verdict of guilty followed by a general sentence within the limits prescribed for the offense, any error in refusing to quash particular bad counts in the information is harmless, where the information contains good counts which are fully sustained by the evidence.

3. A count charging that defendant, in Monroe county on August 21, 1897, "unlawfully and feloniously did set up and promote a certain lottery, which said lottery was then and there for money, and which said lottery is commonly known as 'bolito,' a more particular description of which said lottery is to the solicitor aforesaid unknown," and another in the same language except the words "and promote" are omitted, are good under Section 1, Chapter 4373, Acts of 1895.

4. Counts in an information framed under Section 1, Chapter 4373, Acts of 1895, charging that defendant in a specified county, at a specified time, "unlawfully and feloniously did sell to one Jeremiah Cleare a certain lottery ticket," and "unlawfully and feloniously did sell to Jeremiah Cleare a fractional part of a lottery ticket," and "unlawfully and feloniously did sell to Jeremiah Cleare a share in a lottery ticket," are sufficient without designating the particular lottery ticket, or specifying

the fractional part or share in the lottery ticket alleged to have been sold.

5.  Instructions that are not applicable to any eivdence in the case are properly refused.

6.  Slips of paper stamped by the seller and sold at five cents each to purchasers who number them with certain numbers selected by such purchaser from a blackboard in possession of the seller, which slips of paper are at a subsequent lottery drawing conducted by the seller if the numbers thereon correspond with others drawn, redeemed by the seller's paying to the purchaser $4.50, are lottery tickets, even though such slips of paper do not purport to entitle the holder to the chance of a prize to be distributed by lot, and even though the seller makes no contract or agreement with or representation to, the purchaser to that effect.

7.  Under Chapter 4026, Acts of 1891, where the primary punishment imposed by the court consists of a fine, or a fine and costs of prosecution, and in addition a term of imprisonment in the State prison, an additional period of imprisonment in the State prison for non-payment of the fine, or of the fine and costs may be imposed; but in all other cases the imprisonment for non-payment of a fine, or a fine and costs, must be by confinement in a county jail.

Writ of Error to the Circuit Court for Monroe County.

The facts in the case are stated in the opinion of the court.

*Jefferson B. Browne and Geo. P. Raney,* for Plaintiff in Error.

*The Attorney General,* for Defendant in Error.

CARTER, J.:

On September 13, 1897, the County Solicitor filed in the Criminal Court of Record of Monroe county an information against plaintiff in error, containing sixteen counts. Each count charged that the offense was com-

mitted by defendant, in Monroe county, the time laid in the first, second, third, fourth, fifth, sixth, seventh, eighth and sixteenth, being August 21, 1897, and in the ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth, September 1, 1897. The charging part of the several counts, omitting formal commencements and conclusions, was as follows: 1st. "Unlawfully and feloniously did set up and promote a certain lottery, which said lottery was then and there for money, a more particular description of which said lottery is to the solicitor aforesaid unknown." 9th. Same language except the words "and promote" omitted. 2nd. "Unlawfully and feloniously did set up and promote a certain lottery, which said lottery was then and there for money, and which said lottery is commonly known as 'bolito' a more particular description of which said lottery is to the solicitor aforesaid unknown." 10th. Same language except the words "and promote" omitted. 3rd. "Unlawfully and feloniously did conduct a lottery drawing for the distribution of prizes by chance, a more particular description of which said lottery drawing is to the solicitor aforesaid unknown." 4th and 12th. "Unlawfully and feloniously did by means of a certain lottery dispose of money, a more particular description of which said lottery is to the solicitor aforesaid unknown." 5th and 13th. "Unlawfully and feloniously did sell to one Jeremiah Cleare a certain lottery ticket." 6th and 14th. "Unlawfully and feloniously did sell to Jeremiah Cleare a fractional part of a lottery ticket." 7th and 15th. "Unlawfully and feloniously did sell to Jeremiah Cleare a share in a lottery ticket." 8th. "Unlawfully and feloniously did aid in the sale of lottery tickets to persons to the solicitor aforesaid as yet unknown." 11th. "Unlawfully and feloniously was connected with a certain lottery, a more particular description of which said lot-

tery is to the solicitor aforesaid unknown." 16th. "Unlawfully and feloniously did sell lottery tickets to persons to the solicitor aforesaid unknown, and a more particular description of which said lottery tickets is to the solicitor aforesaid unknown."

Defendant filed his plea to this information, alleging that on September 3, 1897, he was tried and convicted in the police justice's court of the city of Key West, upon a charge "that Leon Bueno did within the said city on the 1st day of September, 1897, violate ordinance No. 39, section 1, by setting up and promoting an establishment for the purpose of playing a game for money, the result of which game is dependent upon lot, number and chance, contrary to the form of the ordinance in such case made and provided, and against the peace and dignity of the city of Key West," and sentenced to pay a fine of $100, and in default of such payment that he be committed to the city prison for sixty days, which judgment and sentence still remained in force; that defendant was the identical person so tried and convicted, and that the offense of which he was convicted was the same as the one charged against him by this information. The court sustained a demurrer to this plea, which ruling is assigned as error. Defendant then filed a demurrer to the several counts in the information assigning as grounds: "1st. They do not set out the facts which constitute the offense charged. 2nd. That none of the sixteen counts in said information sufficiently set forth the essential facts upon which the several counts are based." The court overruled this demurrer, and this ruling is assigned as error. At defendant's request the court instructed the jury that "to sustain a conviction for selling lottery tickets there must be proof to show that the paper represented a share in a game of chance. A lottery is a gaming contract by which for a valuable

consideration one may by favor of the lot obtain a prize of value superior to the amount or value of that which he risks;" and refused to instruct at defendant's request as follows: "2nd. Evidence that the defendant sold a slip of paper bearing certain numbers on one side and a dating stamp on the other, without any contract or agreement, or statement that the paper entitled the holder to the chance of a prize to be distributed by lot is not sufficient to sustain a verdict of guilty. 1st. All gambling is not a lottery. 2nd. The State of Florida prohibits several species of gambling, and proof of gambling simply will not support a conviction for setting up a lottery, or selling a lottery ticket. 3rd. Setting up a lottery is a species of gambling, but proof of gambling which does not establish a lottery is not sufficient to secure a conviction upon this indictment." The refusal to give these instructions is assigned as error.

The jury found the defendant "guilty as charged in the information." Defendant's motion for a new trial was overruled, and the court pronounced sentence as follows: "The sentence of the law is that you, Leon Bueno, pay a fine of one thousand dollars and the costs of this prosecution, in default thereof to be imprisoned by confinement in the State prison at hard labor for a term of one year." The latter or default feature of this sentence is assigned as error. No objection was interposed by defendant to any evidence offered by the State, nor was there a motion in arrest of judgment upon any particular count of the information, nor is it contended in this court that the evidence was insufficient to support the verdict.

I.  The defendant's special plea constituted no defense, and the State's demurrer thereto was properly sustained. Not only was the police justice's court of the city of Key West without jurisdiction to try an alleged

offense against the State lottery statute, but the charge against defendant in that court was based wholly and exclusively upon a city ordinance creating an offense against the city of Key West, and the prosecution against him was for a violation of that ordinance. The offenses were, therefore, not identical, as alleged in the plea, and the conviction in that court constituted no bar to the State's prosecution by information in this case. Theisen v. McDavid, 34 Fla. 440, 16 South. Rep. 321; Hunt v. City of Jacksonville, 34 Fla. 504, 16 South. Rep. 398; Boswell v. State, 20 Fla. 869.

II. The information in this case was based upon section 1, Chapter 4373, act of 1895, which provides that "it shall be unlawful for any person, firm or corporation in this State to set up, promote or conduct any lottery for money or for anything of value, or by means of any lottery to dispose of any money or other property of any kind whatsoever, or to conduct any lottery drawings for the distribution of prizes by lot or chance, * * * or to sell or to offer for sale or to transmit by mail, or otherwise, any lottery tickets, coupon or share in, or fractional part of any lottery ticket, share or coupon, * * * or to be interested in, or connected in any way with any lottery or lottery drawing, or to aid or assist in the sale, disposal or procurement of any lottery ticket, coupon, share or right to any drawing therein. Any violation of this section shall be a felony and shall be punished by a fine of not less than five hundred dollars, nor more than five thousand dollars, or by imprisonment in the State penitentiary not less than one year, nor more than ten years, or by both such fine and imprisonment."

The information was for one offense only, though in the several counts it was charged to have been committed by different methods embraced within the alternative provisions of the statute. The punishment was the same, and the offense was the same—a felony—no

matter which count was covered by the verdict, and the guilt of the defendant was the same whether he violated the statute by doing the acts charged in one count, or by doing every act embraced within all the counts. The punishment prescribed by the statute was the same for a conviction upon one count only, as it would have been for a conviction upon all, because the counts did not charge separate and distinct offenses, but the same offense committed in different ways, to meet the varying aspects in which the evidence might present itself. The verdict found the defendant guilty upon every count of the information, thereby determining that defendant committed the offense in every manner charged. If, therefore, the information contained any good count as to which there was sufficient evidence to sustain a verdict of guilty, it is evident that any error in refusing to quash a bad count charging the same offense, can not affect the validity of the finding on such good count. Where an indictment or information contains good and bad counts, and there is a general verdict of guilty rendered upon the whole, a judgment and sentence will be sustained if the indictment or information contains one count in which the offense is adequately set forth, provided the sentence be within the limits of the punishment prescribed for the offense charged in the good count. Jordan v. State, 22 Fla. 528; 1 Bishop's Crim. Proc., §§1015, 1332. It is perhaps needless to say that this rule would not apply to a sentence based exclusively on a bad count, nor where the general sentence exceeds what the law prescribes for the offense charged in the good count, nor to sentence under a bad count where there is also sentence under the good count. Guided by these principles, it only remains for us to ascertain if there is in this information any good count which the evidence sustained. Jordan v. State, 22 Fla. 528.

No specific objections to the second and tenth counts are pointed out in the brief of plaintiff in error. They follow the language of the statute, and we think they are good. Commonwealth v. Horton, 2 Gray, 69; People v. Taylor, 3 Denio, 91; Commonwealth v. Sullivan, 146 Mass. 142, 15 N. E. Rep. 491.

It is insisted that the fifth and thirteenth counts are bad because they fail to designate a particular lottery ticket; that the sixth and fourteenth counts are bad because they do not specify the fractional parts of the ticket alleged to have been sold, and that the seventh and fifteenth counts are bad because they do not specify what share in the lottery ticket was sold. These objections are untenable. People v. Taylor, 3 Denio, 99; Freleigh v. State, 8 Mo. 606; State v. Follet, 6 N. H. 53; Dunn v. People, 40 Ill. 465; France v. State, 6 Baxt. (Tenn.) 478. The counts mentioned being good, and several of them being sustained by ample evidence, it becomes unnecessary for us to consider the objections urged to other counts.

III. The instructions numbered consecutively, 1, 2 and 3, requested by defendant were properly refused, because there was no evidence to which they were applicable. The evidence was confined entirely to sales of lottery tickets and to the setting up and promoting of a lottery called "bolito," by the defendant. There was no evidence of any gambling of that character mentioned in the instructions, and they were, therefore, not only useless but were calculated to confuse and mislead the jury in their consideration of the testimony before them.

IV. The evidence showed that defendant sold for five cents each, slips of paper or tickets which were numbered by the purchasers themselves, selecting the number from a blackboard, after which the tickets were stamped by defendant with a rubber stamp. These tick-

ets bore on their face no contract or agreement with the purchaser, nor other evidence that the purchaser was to receive a prize at any drawing, nor did the defendant make any agreement or contract with the purchaser at the time of the sale. The tickets were plain pieces of paper bearing no marks except a number and a stamp placed upon them by the defendant, and they were stamped and sold in silence. If the number borne by this ticket corresponded with another drawn at a subsequent "bolito" drawing conducted by the defendant he immediately paid to the ticket holder $4.50; otherwise the latter received nothing. This evidence was sufficient to stamp the ticket with the nature and character of a lottery ticket, notwithstanding there was no contract upon the face of the ticket, and defendant made none with the purchaser at the time of the sale. State v. Rothschild, 19 Mo. App. 137. In view of this evidence there was no error in refusing the first instruction, number 2, requested by defendant. Those given by the court at his request were more appropriate to the evidence, and secured to the defendant every right he was entitled to upon this phase of the evidence.

V. Section 1, Chapter 4026, act of 1891, provides that "Whenever any court or judge shall under the criminal laws of this State sentence and adjudge a person to pay a fine, or a fine and costs of prosecution, such court or judge shall also provide in such sentence a period of time for which such person shall be imprisoned in the county jail in default of payment of the same." Section 2 of the same act provides that "Whenever the sentence shall be one of both fine and imprisonment, it shall also provide for an additional period of imprisonment in the county jail, or in the State prison, according as the other period of imprisonment may be in a county jail or the State prison, for which such person shall be held in

default of payment of fine and costs.   Such additional period shall commence and run from the expiration of the other period of imprisonment fixed by the sentence." Under these provisions the imprisonment for default in payment of a fine only, or of a fine and costs only, must be by confinement in a county jail.   If the primary punishment imposed by the court consists of a fine, or a fine and costs of prosecution, and in addition a term of imprisonment in the State prison, then an additional period of imprisonment in the State prison for non-payment of the fine, or of the fine and costs, may be imposed; but in all other cases the imprisonment for non-payment of the fine, or the fine and costs, must be by confinement in a county jail.   As the primary punishment imposed in this case was a fine and costs of prosecution only, the court should have fixed a period of imprisonment in a county jail, instead of the State prison for non-payment of the fine and costs.   For this error in the sentence the judgment is reversed and the cause remanded with directions to the court below to pass proper sentence upon the defendant, in accordance with the provisions of said Chapter 4026, act of 1891, as interpreted in this opinion.   Roberts v. State, 30 Fla. 82, 11 South. Rep. 526.